UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:23-cv-00601

ANIMACCORD LTD.,
a Cyprus limited company,

      Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

      Defendants.

_____/

## **COMPLAINT**

      Plaintiff ANIMACCORD LTD. ("Animaccord" or "Plaintiff"), by and through

undersigned counsel, hereby sues Defendants, the Individuals, Partnerships, and

Unincorporated Associations identified in the caption, which are set forth on Schedule

"A" hereto (collectively, the "Defendants"), and alleges as follows:

### **NATURE OF THE ACTION**

      1.    Defendants are promoting, selling, reproducing, offering for sale, and

distributing goods using counterfeits and confusingly similar imitations of

Animaccord's trademarks and copyrighted works within this district through various

Internet based e-commerce stores and fully interactive commercial Internet websites

operating under the seller identification names set forth on Schedule "A" hereto (the "Seller IDs").

2.    Like many other famous trademark and copyright owners, Plaintiff suffers ongoing daily and sustained violations of its trademark rights and copyright at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiff's trademarks and copyrights for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's trademarks and copyrights, as well as the destruction of the legitimate market sector in which it operates.

3.    In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, Plaintiff has expended significant amounts of resources in connection with trademark and copyright enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement.  The exponential growth of counterfeiting over the Internet, particularly through online marketplace platforms, has created an environment that requires companies, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the negative effects of confusion and the erosion of the goodwill connected to Plaintiff's brand and copyrighted works.

**JURISDICTION AND VENUE**

4.      This is an action seeking damages and injunctive relief for trademark counterfeiting and infringement, false designation of origin under the Lanham Act, common law unfair competition; common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and 1125(d), and The All Writs Act, 28 U.S.C. § 1651(a); 15 U.S.C. § 1051 *et seq.*; and copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

5.      This Court has subject matter jurisdiction pursuant to 17 U.S.C. §§ 101 *et seq.*, 15 U.S.C. §§ 1114 and 1125(a), 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

6.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims, because the claims are so related to the trademark and copyright claims in this action, over which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Defendants are subject to personal jurisdiction in this District because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this District through at least the Internet based e-commerce stores and fully interactive commercial Internet websites accessible in Florida and operating under the Seller IDs.  Upon information and belief, Defendants infringe Plaintiff's trademarks and copyrights in this District by advertising, using, selling, promoting and distributing counterfeit trademark goods and unauthorized reproductions of Plaintiff's copyrighted works through such Internet based e-commerce stores and fully interactive commercial Internet websites.

8.    Venue is proper in this District pursuant 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens engaged in infringing activities and causing harm within this District by advertising, offering to sell, selling and/or shipping infringing products into this District.  Finally, Venue is proper in this Court pursuant to 28 U.S.C. § 1400(a), which states that "civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights… may be instituted in the district in which the defendant or his agent resides or may be found." Defendants may be found in this District, as they are subject to personal jurisdiction herein.

## THE PLAINTIFF

9.    Plaintiff Animaccord Ltd. is a Cyprus limited company with a principal place of business located in Limassol, Cyprus.

10.    Animaccord is an international licensing company and studio which specializes in worldwide distribution of content, consumer products rights, and brand management.  Animaccord is the owner of all rights, title, and interest in the hit family animated series titled, "Masha and The Bear."

11.    The Masha and The Bear series is loosely based on an oral children's folk story originating in Russia.  The show focuses on the adventures of a little girl named Masha and a fatherly bear that always keeps her safe from disasters.

12.    The Masha and The Bear series is broadcast and streamed throughout the world, including in this District, under multiple world-famous common law and federally registered trademarks and copyrights.  Indeed, the series has been translated into twenty-five (25) languages and has been broadcast and streamed in over one

hundred (100) countries through multiple platforms, including but not limited to Netflix and YouTube.

13. The Masha and The Bear series was included into a list of "TV Shows Destined to be Classics," which was compiled by the cartoon industry's periodical *Animation Magazine* to mark its 250th issue. The series has won the *Kidscreen Award* (regarded as the cartoon world's Oscars) for Best Animation in the Creative Talent category. *Kidscreen Magazine* named Animaccord as one of the top 50 leaders in the world of animation and one of the top 10 production companies of the year. Further, one of the series' episodes titled, "Recipe for disaster," received over 4.3 billion views on YouTube, making the episode the site's fifth most viewed video of all time as well as the site's most viewed non-music video of all time (thus earning the site's *Diamond Creator Award*). By the tenth anniversary of the series' first release, the series was included in the *Guinness World Records 2019* book as the most watch cartoon on YouTube with over fifty billion views and over sixty million subscribers.

14. Masha and The Bear's popularity was properly summarized by the Director of the multinational travel media publishing and technology company, Ink Global, as follows: "Millions of children know and love Masha thanks to a simple recipe, funny, original and engaging storylines combined with beautiful animation. This makes a show that works in any culture and language .... The whole world wants Masha!"

15. In addition to the widely popular series, goods bearing and reproducing the Masha and The Bear trademarks and copyrights, are sold through authorized

retailers throughout the United States, including within the State of Florida and this District.

16.    Genuine and authorized products bearing and reproducing the Masha and The Bear trademarks and copyrights are widely legitimately advertised, promoted, and distributed by and through Animaccord and its authorized partners, including but not limited to Amazon.  Over the course of the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing, has become increasingly important to Animaccord's overall marketing and consumer education efforts.  Thus, Animaccord expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.  Those strategies allow Animaccord and its authorized partners to educate consumers fairly and legitimately about the value associated with the Masha and The Bear brand.

## THE DEFENDANTS

17.    Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendants target their business activities towards consumers throughout the United States, including within this district

through the operation of Internet based e-commerce stores via Internet marketplace websites under the Seller IDs.

18.    Defendants are the past and present controlling forces behind the sale of products under counterfeits and infringements of Plaintiff's trademarks and copyrights as described herein using at least the Seller IDs.

19.    Upon information and belief, Defendants directly engage in unfair competition by advertising, offering for sale, and selling goods bearing one or more of Plaintiff's trademarks and copyrights to consumers within the United States and this District through Internet based e-commerce stores using, at least, the Seller IDs and additional seller identification aliases and domain names not yet known to Plaintiff. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

20.    Defendants have registered, established or purchased, and maintained their Seller IDs.  Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs.

21.    Upon information and belief, some Defendants have registered and/or maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

22.    Upon information and belief, Defendants will continue to register or acquire new seller identification aliases and domain names for the purpose of selling and offering for sale goods bearing counterfeit and confusingly similar imitations and

unauthorized reproductions or derivative works of one or more of Plaintiff's trademarks or copyrights unless preliminarily and permanently enjoined.

23.     Defendants use their Internet-based businesses in order to infringe the intellectual property rights of Plaintiff.

24.     Defendants' business names, *i.e.*, the Seller IDs, associated payment accounts, and any other alias seller identification names used in connection with the sale of counterfeit and infringing goods bearing one or more of Plaintiff's trademarks and copyrights are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.   Moreover, Defendants are using Plaintiff's famous trademarks and copyrights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

## GENERAL FACTUAL ALLEGATIONS

### *Animaccord's Intellectual Property Rights*

25.     Plaintiff is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "Masha and The Bear Marks"):

| Trademark | Reg. Number | Reg. Date | First Use Date | Classes / Goods |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
|  | 4,790,909 | 08/11/2015 | 4/15/2015 | IC 009: Pre-recorded DVDs, namely, motion picture films featuring children's entertainment;<br><br>IC 016: Paper products, namely, children's storybooks, notebooks, coloring books, greetings cards, stationery, stickers and pens;<br><br>IC 018: Backpacks;<br><br>IC 025: Apparel, namely, T-shirts and shoes;<br><br>IC 028: Toys, namely, dolls, stuffed toys, board games and card games; and<br><br>IC 030: Candy. |
| MASHA AND THE BEAR | 4,790,906 | 08/11/2015 | 08/04/2012 | IC 009: Pre-recorded DVDs, namely, motion picture films featuring children's entertainment; and<br><br>IC 041: Entertainment services, namely, production of motion picture |

| | | | | |
|---|---|---|---|---|
| | | | | films and motion picture film distribution services rendered through the media of cable television, broadcast television, and the Internet. |
| MASHA AND THE BEAR | 5,420,550 | 03/13/2018 | 06/16/2016 | *See* n. 1 below[1] |

---

[1] IC 003: Non-medicated soaps; almond soaps; antiperspirant soap; balms other than for medical or pharmaceutical purposes, namely, lip balms, body balms; bath salts, not for medical purposes; breath freshening sprays; breath freshening strips; cakes of toilet soap; cleaning preparations; cosmetic creams; cosmetic kits comprised on non-medicated cosmetics; cosmetics; cosmetic cotton wool; deodorant soap; deodorants for human beings or for animals; disinfectant soap; dry shampoos; dry cleaning preparations; hair lotions; hair sprays; laundry preparations, namely, laundry detergents, laundry softener, laundry bleach; lip glosses; lipstick; lipstick cases; lotions for cosmetic purposes; make-up; medicated soaps; mouth washes, not for medical purposes; mouthwashes; nail varnish; nail polish; nail art stickers; perfumes; shampoos; toilet water; toiletries, namely, non-medicated toiletry preparations; eau de cologne; perfumery; scented body splash water;

IC 012: Vehicles, namely, bicycles, tricycles, sleighs, kick sledges, baby carriages, prams, pushchairs, strollers; bicycles; tricycles; sleighs for transport purposes; kick sledges; baby carriages; prams; pushchairs; strollers; scooters, namely, motor scooters;

IC 014: Precious metals; jewelry; jewelry cases; imitation jewelry; clocks; wall clocks; electronic clocks; alarm clocks; clocks and watches; stands for clocks; horological instruments; chronometric instruments; precious stones; key rings of precious metal; watches;

IC 015: Accordions; cases for musical instruments; castanets; drums; drumsticks; electric musical instruments; flutes; guitars; harmonicas; horns; music synthesizers; music stands; musical boxes; pianos; saxophones; stands for musical instruments; tambourines; triangles; trombones; trumpets; violins; xylophones; musical instruments; basses;

IC 020: Furniture; furniture shelves; furniture of metal; figurines of wood, wax, plaster or plastic; fans for personal use, non-electric; air pillows, not for medical purposes; air mattresses, not for medical purposes; armchairs; baby changing mats; baskets, not of metal, namely, baker's bread baskets, Moses baskets; bead curtains for decoration; bed bases; bedding, except linen, namely, bed frames, bumper guards for cribs; beds; benches; bolsters; book rests; bottle caps, not of metal; cases of wood or plastic; bins of wood or plastic; boxes of wood or plastic; chests of drawers; chests for toys; clothes hooks, not of metal; coat hangers; clothes hangers; coat stands; containers,

| | | | | IC 016: Paper products, namely, children's storybooks, notebooks, coloring books, |
|---|---|---|---|---|
| MASHA AND THE BEAR | 4,800,025 | 08/25/2015 | | |

---

not of metal for storage and transport; costume stands; cupboards; curtain rings; curtain rails; curtain rollers; curtain pins; curtain rods; curtain hooks; curtain fittings; cushions; deck chairs; decorations of plastic for foodstuffs; desks; divans; door handles, not of metal; door bells, not of metal, non-electric; door knockers, not of metal; doors for furniture; dressing tables; easy chairs; embroidery frames; toilet mirrors being hand-held mirrors; head-rests; high chairs for babies; house numbers, not of metal, non-luminous; hydrostatic beds, not for medical purposes; identification bracelets, not of metal; indoor window blinds; infant walkers; inflatable furniture; inflatable publicity objects; keyboards for hanging keys; ladders of wood or plastics; letter boxes not of metal or masonry; lockers; mats for infant playpens; mattresses; medicine cabinets; mirrors; decorative mobiles; office furniture; packaging containers of plastic; paper blinds; picture frames; pillows; placards of wood or plastics; plastic key cards, not encoded and not magnetic; playpens for babies; school furniture; chairs; shelves for storage; writing desks; sleeping bags for camping; sofas; stuffed animals; tables; tables of metal; tea trolleys; interior textile window blinds; tool and tool accessory trays, not of metal; umbrella stands; wall-mounted diaper changing platforms; table tops; slatted indoor blinds;

IC 021: Aerosol dispensers, not for medical purposes; baby bathtubs, portable; baskets for domestic use; bottles, sold empty; bowls; brushes, namely, toothbrushes, hair brushes; buckets; buckets made of woven fabrics; non-electric candelabra; candy boxes; ceramics for household purposes, namely, ceramic figurines, ceramic vases, ceramic vessels, bowls, plates and pots; coffeepots, non-electric; combs; electric combs; comb cases; confectioners' decorating bags; containers for household or kitchen use; cookery molds; cookie jars; cooking pots; cosmetic utensils, namely, cosmetic brushes; cups; cups of paper or plastic; dishes; disposable table plates; drinking bottles for sports; drinking glasses; dustbins; egg cups; floss for dental purposes; cups for eating fruits; frying pans; glass jars; glass bowls; gloves for household purposes; hot pots; ice buckets; ice cube molds; kitchen containers; lunch boxes; mugs; napkin holders; painted beverage glassware; paper plates; perfume vaporizers sold empty; perfume sprayers; porcelain ware, namely, mugs, statuettes; pots; pottery, namely, mugs, statuettes; salad bowls; soap holders; dishes for soap; soap boxes; soup bowls; straws for drinking; sugar bowls; tableware, other than knives, forks and spoons, namely, scoops for serving or portioning; tea services in the nature of tableware; teapots; toothbrushes, electric; toothbrushes; toothpicks; trays for domestic purposes; trays for domestic purposes, of paper; vases; vegetable dishes; and

IC 024: Textile material; bed covers; plastic table covers; bed linen; tablecloths, not of paper; handkerchiefs of textiles; travelling rugs; towels of textile; bed blankets; shower curtains of textile or plastic; curtains of textile or plastic; net curtains; table runners, not of paper; oilcloth for use as tablecloths.

| | | | | |
|---|---|---|---|---|
| | | | 04/15/2015 | greetings cards, stationery, stickers and pens;<br><br>IC 018: Backpacks;<br><br>IC 025: Apparel, namely, T-shirts and shoes;<br><br>IC 028: Toys, namely dolls, stuffed toys, board games and card games;<br><br>IC 030: Candy. |

26.     The foregoing registrations for the Masha and The Bear Marks constitute presumptive evidence of their ownership and validity.  The Masha and The Bear Marks are used in connection with the design, marketing, and distribution of high-quality goods in at least the categories identified above.  True and correct copies of the federal registrations for the Masha and The Bear Marks are attached hereto as **Composite Exhibit 1.**

27.     Long before Defendants began their infringing activities complained of herein, the Masha and The Bear Marks have been used by Plaintiff in interstate commerce to identify and distinguish Plaintiff's series and associated merchandise for an extended period.

28.     The Masha and The Bear Marks are well-known and famous and have been for many years.  Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Masha and The Bear

12

Marks and products bearing the Masha and The Bear Marks. The Masha and The Bear Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

29.    Plaintiff has extensively used, advertised, and promoted the Masha and The Bear Marks in the United States in association with its animated series and associated merchandise.

30.    As a result of Plaintiff's efforts, members of the consuming public readily identify

products and merchandise bearing or sold under the Masha and The Bear Marks as being high quality goods sponsored and approved by Plaintiff.

31.    The Masha and The Bear Marks serve as symbols of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

32.    Plaintiff is also the owner of the following copyrights registered in the United States of America:

| Registration Number | Registration Date | Title of Work |
|---|---|---|
| VA 1-835-810 | Aug. 21, 2012 | Masha and the Bear Logo |
| PA 1-813-099 | July 12, 2012 | First day of school |
| PA 1-813-100 | July 12, 2012 | Laundry day |
| PA 1-813-101 | July 12, 2012 | Holiday on ice |
| PA 1-813-102 | July 12, 2012 | One, two, three! Light the Christmas tree! |
| PA 1-813-103 | July 12, 2012 | Recipe for disaster |
| TX 8-552-180 | Dec. 27, 2017 | Masha and the Bear: A Magical Holiday |
| TX 8-588-442 | Aug. 14, 2017 | Masha and the Bear: A Spooky Bedtime |
| TX 8-431-770 | June 23, 2017 | Masha and the Bear: Kidding Around! |
| TX 8-537-380 | Dec. 27, 2017 | Masha and the Bear: The Best Birthday |
| TX 8-444-776 | Aug. 7, 2017 | Masha and the Bear: The Girl Who Called Wolf |

33.    Upon information and belief, Plaintiff's registration of the works identified herein pre-dates Defendants' infringement thereof.  True and correct copies of the U.S. Copyright Office's online records for these works are attached hereto as **Composite Exhibit 2.**

34.    Additionally, Plaintiff is the owner of may unregistered copyrighted works, originally produced in Russia, a Berne Convention signatory.  Examples of these works include but are not limited to all episodes that are not identified in the registrations above (four total seasons with over eighty (80) total episodes).  A list of these episodes is attached hereto as **Exhibit 3.**

35.    The copyrighted works identified in Composite Exhibit 2 and Exhibit 3 hereto are collectively referred to herein as the "Copyrighted Works."

36.    Plaintiff has all exclusive rights in and to the Copyrighted Works and controls all licenses to distribute, perform, and enforce its rights to the Copyrighted Works.

37.    Plaintiff has expended substantial time, money, and other resources developing, advertising, and developing, promoting, and distributing the Copyrighted Works.

*Defendants' Counterfeiting and Infringing Conduct*

38.    Upon information and belief, Defendants are promoting and advertising, distributing, selling, and/or offering for sale counterfeit and infringing goods in interstate commerce using exact copies and confusingly similar copies of the Masha and The Bear Marks and Copyrighted Works through at least the Internet based e-

14

commerce stores operating under the Seller IDs (collectively, the "Counterfeit Goods"). Plaintiff has used the Masha and The Bear Marks and Copyrighted Works extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

39.    Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially and materially different than that of Plaintiff's genuine goods. Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by Plaintiff under the Masha and The Bear Marks and Copyrighted Works despite Defendants' knowledge that they are without authority to use the Masha and The Bear Marks and Copyrighted Works. The effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, or approved by Plaintiff.

40.    Defendants advertise their Counterfeit Goods for sale to the consuming public via e-commerce stores on Internet marketplace websites using at least the Seller IDs . In so advertising these goods, Defendants improperly and unlawfully use one or more of the Masha and The Bear Marks and Copyrighted Works without Plaintiff's permission.

41.    As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, employing and benefitting from

substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the Masha and The Bear Marks and Copyrighted Works. Specifically, Defendants are using counterfeits and infringements of Plaintiff's famous Masha and The Bear Marks and Copyrighted Works in order to make their e-commerce stores and websites selling illegal goods appear more relevant, authentic, and attractive to consumers searching for Plaintiff's related goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the goodwill associated with the Masha and The Bear Marks and Copyrighted Works, and/or (iii) increasing Plaintiff's overall cost to market the Masha and The Bear Marks and Copyrighted Works and educate consumers about its brand via the Internet.

42. Upon information and belief, Defendants are concurrently targeting their counterfeiting and infringing activities toward consumers and causing harm within this District and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

43. Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Masha and The Bear

Marks and Copyrighted Works, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

44.     Defendants' use of the Masha and The Bear Marks and Copyrighted Works, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

45.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.  If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

46.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

47.     Upon information and belief, Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive

activities connected to their Seller IDs and any other alias seller identification names being used and/or controlled by them.

48.     Further, upon information and belief, Defendants are likely to transfer or conceal their assets to avoid payment of any monetary judgment awarded to Plaintiff.

49.     Plaintiff has no adequate remedy at law.

50.     Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the Masha and The Bear Marks and Copyrighted Works.

51.     The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

## COUNT I -- TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

52.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 51 as though fully set forth herein.

53.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Masha and The Bear Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

54.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods, using counterfeits and/or infringements of one or more of the Masha and The Bear Marks.  Defendants are continuously infringing and

inducing others to infringe the Masha and The Bear Marks by using one or more of them to advertise, promote, offer to sell, and/or sell at least counterfeit and infringing goods.

55.    Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

56.    Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable damage to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

57.    Defendants' above-described illegal actions constitute counterfeiting and infringement of the Masha and The Bear Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

58.    Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined.  Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II -- FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(A) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

59.    Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 51 as though fully set forth herein.

60.    Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of one or more of the Masha and The Bear Marks have been widely advertised and offered for sale throughout the United States via the Internet.

61.    Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of one or more of the Masha and The Bear Marks are virtually identical in appearance to Plaintiff's genuine goods.  However, Defendants' Counterfeit Goods are different in quality.  Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

62.    Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

63.    Defendants have authorized infringing uses of one or more of the Masha and The Bear Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.  Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

64.    Additionally, Defendants are using counterfeits and infringements of the Masha and The Bear Marks in order to unfairly compete with Plaintiff and others for space within search engine organic results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the World Wide Web.

65.    Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

66.    Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III -- COMMON LAW UNFAIR COMPETITION

67.    Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 51 as though fully set forth herein.

68.    This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods using marks which are virtually identical, both visually and phonetically, to one or more of the Masha and The Bear Marks in violation of Florida's common law of unfair competition.

69.    Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing counterfeits and infringements

of the Masha and The Bear Marks. Defendants are also using counterfeits and infringements of the Masha and The Bear Marks to unfairly compete with Plaintiff for (i) space in search engine results across an array of search terms and/or (ii) visibility on the World Wide Web.

70. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of the Masha and The Bear Marks.

71. Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

72. Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 51 as though fully set forth herein.

73. This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing one or more of the Masha and The Bear Marks. Plaintiff is the owner of all common law rights in and to the Masha and The Bear Marks.

74. Specifically, Defendants, upon information and belief, are promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of the Masha and The Bear Marks.

75. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and general

consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the Masha and The Bear Marks.

76.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## COUNT V -- INFRINGEMENT OF COPYRIGHT

77.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 51 as though fully set forth herein.

78.     Plaintiff has registered and owns the copyrights in and to the registered works identified on Composite Exhibit 2 hereto.  Plaintiff owns the unregistered copyrights in and to the works identified in Exhibit 3 hereto, which were originally produced in Russia, a Berne convention signatory.

79.     Defendants have copied, performed, and distributed these Copyrighted Works through their advertising, distributing, offering for sale, and selling of Counterfeit Goods as part of a large scale and ongoing daily illegal enterprise.  This illegal enterprise, without injunctive relief, will continue through the Defendants' Seller ID's as well as through other seller identifications owned now or in the future by the Defendants.

80.     Defendants are directly liable for infringing Plaintiff's Copyrighted Works under the Copyright Act, 17 U.S.C. §§ 106(1), (2), (3), (5) & 501.

81.     Without authorization from any Plaintiff, or right under law, Defendants have directly infringed Plaintiff's Copyrighted Works by their copying, display, and distribution of those works used by Defendants to cause and effect the copying,

display, and/or distribution of those works through their advertising, distributing, offering for sale, and selling of Counterfeit Goods.

82.    Defendants have actual and constructive knowledge, or should have knowledge, of their infringement of Plaintiff's Copyrighted Works.

83.    The foregoing acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to Plaintiff's rights in the Copyrighted Works.

84.    As a direct and proximate result of Defendants' infringement of Plaintiff's exclusive rights, Plaintiff is entitled to actual damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b).

85.    Defendants' unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm and unquantifiable damages to Plaintiff and are unjustly enriching Defendants at Plaintiff's expense.

86.    Alternatively, Plaintiff is entitled to the maximum statutory damages in the amount of $150,000.00 per infringement, pursuant to 17 U.S.C. § 504(c), or such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

87.    Plaintiff is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

88.    In addition, Plaintiff is entitled to injunctive relief, as set forth below, because of the continuing infringement of many of Plaintiff's Copyrighted Works and because of the significant threat of future infringement as evidenced herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

A.    Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Masha and The Bear Marks; from using the Masha and The Bear Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, copy, or colorable imitation of the Masha and The Bear Copyrighted Works in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way

endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's Masha and The Bear Marks or unauthorized copies of Plaintiff's Copyrighted Works; and from otherwise unfairly competing with Plaintiff.

B.    Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court disable and/or cease facilitating access to the Seller IDs, associated ecommerce stores and websites, and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Masha and The Bear Marks and Copyrighted Works.

C.    Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective Seller ID.

D.    Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court permanently remove any and all listings and

associated images of goods bearing counterfeits and/or infringements of the Masha and The Bear Marks or Copyrighted Works via the e-commerce stores operating under the Seller IDs, and upon Plaintiff's request, any other listings and images of goods bearing counterfeits and/or infringements of the Masha and The Bear Marks or Copyrighted Works associated with and/or linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the Masha and The Bear Marks or Copyrighted Works.

E.      Entry of an order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

F.      Entry of an order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other alias seller identification or e-commerce store names, domain names and/or websites used by Defendants presently or in the future, as well as any other related accounts of the

same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

G.    Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

H.    Entry of an Order requiring Defendants to pay Plaintiff for all profits and damages resulting from Defendants' copyright infringement activities, together with appropriate interest thereon; that Defendants be required to account to Plaintiff for, and disgorge to Plaintiff, and to pay to Plaintiff, all the gains, profits, savings and advantages realized by Defendants from their acts of copyright infringement described above; or, at Plaintiff's election with respect to Count V, that Plaintiff be awarded statutory damages from Defendants in the amount of one hundred and fifty thousand dollars ($150,000.00) per each registered Copyrighted Work infringed, as provided by 17 U.S.C. § 504(c), enhanced to reflect the willful nature of Defendants' infringement, instead of an award of actual damages or profits, and be awarded its costs and disbursements incurred in this action, including reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

I.    Entry of an order requiring Defendants to pay prejudgment interest according to law.

J.    Entry of an order for such other and further relief as the Court may deem proper and just.

Date:  March 17, 2023                    Respectfully submitted by,

                              By:    */s/ A. Robert Weaver*
                                     **THE BRICKELL IP GROUP, PLLC**
                                     **Arthur Robert Weaver, Trial Counsel**
                                     Fla. Bar No. 92132
                                     Email: rweaver@brickellip.com
                                     **Richard Guerra**
                                     Fla. Bar No. 689521
                                     Email: rguerra@brickellip.com
                                     400 North Tampa Street, 15th Floor
                                     Tampa, FL, 33602
                                     Tel: 813-278-1358

                                     *Counsel for Plaintiff*